506 P.2d 455

Leslie L. MITCHELL, doing business as
Mitchell Construction Company, Plaintiff-
Respondent and Cross-Appellant,

v.

C. Ed FLANDRO et al., Defendants-Appel-
lants and Cross-Respondents.

No. 10994.

Supreme Court of Idaho.

Dec. 22, 1972.

Rehearing Denied Feb. 26, 1973.

(hereinafter referred to as respondent), with C. Ed Flandro, the late Stella Flandro, and C. Ed Flandro, Inc., (hereinafter referred to as appellants) for the construction of an automobile sales and service plant to house appellants' Ford dealership.[1] Other party appellants named, the lessor-owners of the realty on which the sales and service plant was constructed, are passive in this action.

According to the memorandum decision of the district court, respondents and appellants entered into the contract for Phase 1 of the construction on November 14, 1963. The Phase 2 contract was entered into on February 24, 1964. At the time of the commencement of this action, appellants had paid all the amounts due on both contracts except for $21,209.29.

On November 10, 1964, Kenneth Douglas, appellants' architect, signed a certificate acknowledging the substantial completion of the construction. Respondent alleges that he continued to do finishing work on the structure and finally ceased work altogether on January 2, 1965. Respondent filed a contractor's lien, pursuant to I.C. 45–507, on March 11, 1965.

Respondent instituted a foreclosure of the lien for the unpaid contract price due him. Appellants counterclaimed for damages of $50,000 for respondent's allegedly negligent construction and for $50.00 a day as liquidated damages for respondents' failure to complete the Phase 1 construction. At the commencement of the trial in July, 1970, respondents moved to amend their complaint by adding separate counts for recovery for breach of contract by appellants and for recovery in *quantum meruit*. Respondents' motion was denied by the district court at that time.

At the conclusion of the trial, respondents renewed their motion to amend the complaint. The district court allowed the amendment to add a breach of contract

———◆———

Ben Peterson, R. M. Whittier, Pocatello, for appellants and cross respondents.

John B. Kugler, Pocatello, for respondent and cross appellant.

BAKES, Justice.

This action arose out of two construction contracts (referred to as Phase 1 and Phase 2) executed by Leslie Mitchell, d/b/a Mitchell Construction Company,

1. The two separate contracts were entered into to expedite construction. Phase 1 concerned only the earth moving, the compaction, and the laying of the foundation; Phase 2 covered the remainder of the construction of the sales and service plant.

count, but denied the motion in regard to adding a count in *quantum meruit*.

In its *memorandum decision*, the *district* court concluded that no recovery could be had on the lien since it had not been timely filed. The court decided, however, that the action had in fact been tried on the contract theory and that therefore respondent was entitled to damages in the amount of $21,209.29 for breach of contract, less offsets totalling $3,133.89 for respondents' breaches of warranty.

From the district court order both sides have appealed. Out of the numerous assignments of error advanced by both sides, several pertinent issues have arisen which require disposition in this appeal. The two major disputes involve (1) the validity of respondent's lien and (2) the propriety of the district court decision allowing respondent to amend the complaint to add the contractual count, and ultimately basing the award on that count. Other issues requiring discussion herein include the correctness of the district court's treatment of the alleged offsets by appellants, the adequacy of the court's findings of facts and conclusions of law, the denial of compensation for "extra work" allegedly performed by respondent, and the failure to award interest to respondent. With the exception of the interest claim, we affirm the district court *in toto*.

█ Of primary importance in this appeal is the district court's conclusion that respondent's lien was not timely filed as required in I.C. 45–507. At the time that respondent filed his lien, that section provided:

"Every original contractor claiming the benefit of this chapter must, within ninety (90) days, . . . after the completion of any building, improvement or structure, or after the completion of the alteration or repair thereof, or in case he cease to labor thereon before the completion thereof, then after he so ceases to labor or after he has ceased to labor thereon for any cause, or after he has ceased to furnish materials therefor, . . . file for record with the county recorder for the county in which such property or some part thereof is situated, a claim containing a statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, . . ." I.C. 45–507.

It is respondent's position that due to the fact that he allegedly performed work on the structure up until January 2, 1965, that the lien application filed March 11, 1965, was in fact filed within ninety days of the cessation of work under the contract and hence was timely filed. In finding that the lien was not timely filed, the trial court stated:

" . . . as a matter of fact, that from the November [1964] date through the March [1965] date that plaintiff did not prove services of such a nature as to expand the time for filing his lien and the court concludes, therefore, as a matter of law, that the lien was not timely filed . . . ." (Clk. Tr. p. 126).

Since there is competent evidence in the record supporting the trial court's factual determination that no substantial work was proven done after November, 1964, we do not disturb it on appeal. *E. g.* Reardon v. Union Pacific R.R., 93 Idaho 833, 475 P.2d 370; Jolley v. Puregro Co., 94 Idaho 702, 496 P.2d 939 (1972).

It is undisputed in the record that the certificate of "substantial completion" was submitted by respondent and approved by appellants' architect on November 10, 1964. According to the architect, the certificate issued when the construction was completed to the extent that appellants could assume occupancy. On issuance of the certificate, the respondent-builders were entitled to submit their final estimate for payment from respondent Mitchell's own testimony it appears that the issuance of the

certificate also marked the effective completion of construction under the contract.[2]

It is established that "trivial" work done or materials furnished after the contract has been substantially completed will not extend the time in which a lien claim can be filed under I.C. 45–507. As well articulated in Gem State Lumber Co. v. Whitty, 37 Idaho 489, 217 P. 1027:

> "While the time fixed in the contract for the completion of a building is not controlling against laborers or materialmen, it has a direct bearing upon the time when the building was to be completed under the contract, so that the time for filing liens for material and labor would begin to run. The statute provides that this time shall be computed from the date of the last item of material furnished, or from the last work performed. *The rule very generally prevails that such time begins to run from a substantial completion of the contract, and that new items thereafter added to the account will not extend the time in which to claim a lien or revive a lien already expired.* The more difficult question is to determine when under this doctrine the contract has been completed. By the weight of authority, this is to be ascertained by the conditions of the contract, the conduct of the parties with reference thereto, and the surrounding facts and circumstances. (Citations omitted).

> "Ordinarily, *furnishing an article or performing a service trivial in character is not sufficient to extend the time for claiming a lien or to revive an expired lien, where the article is furnished or the service rendered after a substantial completion of the contract, and the article is not expressly required by the terms thereof.*" Gem State Lbr. Co. v. Whitty, *supra*, at 499, 217 P. at 1030. (Emphasis added).

Since it is undisputed that the contract was substantially completed on November 10, 1964, and since the trial court found inadequate proof that any material or substantial work was performed or supplies furnished after that date which would extend the time for filing a lien, we conclude

---

2. "Q. I assume that the final estimate was submitted when the job was completed, that's true, too, isn't it?

A. Yes, it was submitted, well, more than thirty days after the job was completed. It was submitted at the end of the month following completion. Substantial completion, I will put it this way; I don't mean final acceptance by any means.

Q. Well, now, this contract about which you testified says on page 2, 'When work is 100% complete but not finaled out 95% of the contract will be paid leaving a retainer of 5%.'

A. That's right, and we never received any papers since.

Q. Now this certificate of final estimate submitted, $21,209.29 was submitted to the architect at a time when you deemed the job fully completed is that not so?

A. Yes, substantially complete.

Q. Well, its 100% completed according to the agreement, isn't it?

A. Well, it was substantially complete at that time.

. . . .

Q. On the basis that at that time that job was totally 100% complete, right?

A. With some exceptions, I assume.

Q. You don't know what they are, do you?

A. Yes.

Q. What are they?

A. There were a few questions that had come up.

Q. But as far as you were concerned in your submitting this estimate, you considered that job 100% complete because you billed the architect to Mr. Flandro for the whole balance of the account.

A. That's right at that time."

Then on redirect examination, respondent continued:

"Q. When you said substantial completion, you do not mean 100% complete, is that correct?

A. I mean we were doing in addition to that some other little bits—

Q. Were there still things to be done under the contract as required by the plans and specifications at that time?

A. Well there is under any contract, but you always get final payment and then you pick anything up after that."

(Rptr. Tr. pp. 69, 70; C. Mitchell on Cross examination & Redirect examination).

that the trial court was correct in ruling that the lien was not timely filed. H. W. Johns-Manville Co. v. Allen, 37 Idaho 153, 215 P. 840 (1923).

Appellants' major contention is that the court erred in allowing respondent to amend his pleadings by adding a breach of contract count at the close of trial. Appellants' argument is twofold. Arguing that the amendment adds a distinctly new cause of action from the originally pleaded lien foreclosure, appellants claim that since over five years have passed since the alleged breach of contract that any recovery on the contract theory would be barred by the statute of limitations. I.C. 5–216. In this regard, appellants also note that no sanctuary is provided respondents by the "relation back" aspect of I.R.C.P. Rule 15(c) which provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Appellants contend that this rule is not applicable in the situation where, as in the case at bar, the complainant attempts to add an entirely new cause of action after the time when the statute of limitations would otherwise have barred such action. 6 Wright & Miller, Federal Practice and Procedure, § 1497, pp. 489–92 (1971). *See* Denton v. Detweiler, 48 Idaho 369, 282 P. 82 (1929). Appellants second contention is that the allowance of the amendment by the district court to add an action at law (i. e., contract action) effectively denies appellants their rights to an adjudication of such a claim by a jury in all actions at law.

█ First, there is no merit to the contention that the amendment added an entirely new cause of action. In fact, the amendment was not necessary. Plaintiff's complaint effectively alleged a cause of action for a breach of contract in addition to the lien foreclosure claim. Paragraph 2 of the complaint alleged that "the defendants C. Ed Flandro and Stella Flandro and C. Ed Flandro, Inc., with the knowledge and consent of the other defendants hereinabove mentioned, entered into an agreement with the plaintiff whereby plaintiff was to construct a Ford sales and service building and related facilities upon the above described premises . . . ." Exhibits A and B, being the contracts for Phase 1 and Phase 2 were offered into evidence by the plaintiff and received in evidence without objection. The architect's specifications for the construction in Phase 1 and Phase 2 were offered into evidence by the defendants and were admitted by the court. The plaintiff's complaint alleges that there was a balance due on the contracts in the sum of $21,209.29. The complaint further alleges the filing of the lien and the request for the foreclosure of the lien.

█ It is apparent from the foregoing that the plaintiff's complaint alleged a cause of action for breach of contract, and under these circumstances the lien was merely security for the indebtedness. It is difficult to imagine a set of facts whereby an original contractor could have a lien against an owner's property without there being an express or implied contract between the parties. Section 45–501 requires that the work be done or the materials furnished "at the instance of the owner of the building or other improvement or his agent" or there can be no lien. Therefore, the allegation of a mechanic's or materialman's lien between a contractor and an owner of necessity carries with it an allegation of an express or implied contract and as previously pointed out in this case, there is an allegation of an express breach of contract. Therefore the motion to amend the complaint to add a separate cause of action for breach of contract was unnecessary. The lien having failed because of untimeliness, the pleading of the cause of action for breach of contract authorized the trial court to enter a personal judgment against the defendants C. Ed

Flandro, Stella Flandro, and C. Ed Flandro, Inc. Groff v. Stringer et al., 82 N.M. 180, 477 P.2d 814 (1970); 53 Am.Jur.2d, Mechanics' Liens, ¶ 417, p. 931; Lus v. Pecararo, 41 Idaho 425, 238 P. 1021 (1925); Boise Lumber Co. v. Independent School Dist. of Boise City, Idaho, et al., 36 Idaho 778, 214 P. 143 (1923). However, where there is no privity of contract between the lien claimant and the owner, such as the case of a subcontractor to an original contractor, then if the lien fails no personal judgment can be entered. Weeter Lumber Co. v. Fales, 20 Idaho 255, 118 P. 289 (1911). We are not unmindful of the case of Brown v. Hawkins, 66 Idaho 351, 158 P.2d 840 (1945), in which this Court quoted from a Montana case language to the effect that an action for the foreclosure of a lien is not an action on contract for the recovery of money or damages only. That language is at the present time against the great weight of authority and is disapproved.

 Appellant's contention that it was effectively denied a right to a jury trial by virtue of the amendment filed by the trial court is equally without merit. We have been unable to find any request for a jury trial in the record. Appellant, knowing that the action involved the contract and that it was contesting the lien should have asked for a jury before the trial commenced. If the trial court had found the lien to have been valid, the jury would have been advisory only to the trial court. Once the trial court found the lien to have been invalid, the balance of the jury's findings would have been binding upon the trial court, subject to the usual rules of sufficiency of the evidence and the power of the court to grant a new trial. This problem has been before this court in the case of Lus v. Pecararo, *supra*, wherein

the court stated that once a claim of mechanic's lien has failed, the defendant is entitled to a jury trial on the law action arising out of the lien. However, the court stated:

"The record does not disclose, in the instant case, that appellant made a demand for a jury trial after the action was found to be one at law."

To avoid trials in stages, the practice should be that in the event of the foreclosure of a mechanic's or materialman's lien in which the defense of invalidity of the lien is raised, either party desiring a jury trial should request a jury within the time provided for actions of law, and if the lien is held to be valid, the jury's verdict will be advisory only. However, if the lien is found to be invalid, the case will be deemed to be an action on the contract and the jury's verdict will be treated as any other action at law.

 Both appellants and respondent attack the district court's treatment of the offsets pleaded by appellants as reducing the amount due under the contract. Appellants assert that all of the pleaded offsets should have been allowed by the district court. Respondent, on the other hand, contends that the offsets allowed by the district court on a breach of warranty theory were improper. The district court in its memorandum decision determined that appellants suffered implied breach of warranty damages in the amount of $2,500 because of the failure of the Torginal showroom floor and in the further sum of $633.89 which constituted the cost of replacing a slab of concrete under the air conditioning unit in the plant. The district court's factual determinations are supported by substantial and competent although conflicting evidence, and will not be disturbed on appeal.[3] Bratton v. Slininger, 93

---

3. Both appellant Flandro and his architect, Kenneth Douglas, testified as to the failure of the Torginal floor, and Flandro testified as to the value or the cost of replacement of such floor and alluded to a warranty promised him by respondent Mitchell guaranteeing the upkeep of

the floor. (Rptr. Tr. pp. 119, 212, 151, 170–173). Both appellant Flandro and architect Douglas also testified as to the cause of the failure of the air conditioning slab as resulting from improper compaction. (Rptr. Tr. pp. 125, 153, 163).

Idaho 248, 460 P.2d 383 (1969); Jolley v. Puregro, *supra.* The other claims for off-sets made by appellants were not factually supported by the evidence and were properly denied.

■ The next issue raised by appellants concerns the district court's alleged failure to make adequate findings of fact. In regard to the fact-finding duty of the trial court, I.R.C.P. Rule 52(a) provides:

"[T]he court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; . . . if an opinion or memorandum decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein."

It is our opinion that the district court's presentation in its memorandum opinion adequately details the findings of fact on which the conclusions of law and the ultimate decision were based. We note that in making such findings "there is no necessity for over-elaboration of detail or particularization of facts." Angleton v. Angleton, 84 Idaho 184, 190, 370 P.2d 788, 791 (1962).

■ Respondent, by way of cross appeal, raises two additional issues which require discussion. First, respondent contends that the court erred in failing to allow recovery on *quantum meruit* for the value of additional services rendered outside the terms of the contract, and in refusing to admit his Exhibit E and in refusing to allow evidence and his offer of proof in support thereof. On July 15, 1970, six days before the trial, respondent filed a notice of intent to amend its complaint to add a cause of action for *quantum meruit* for these extra services. This filing was more than four and one half years after any of the extra work was performed. On July 17, the appellant filed objections to the amendment to the complaint and specifically raised the statute of limitations as a defense to any amendment to allege a cause of action for *quantum meruit* for extra work. The trial court

took the respondent's request to amend its complaint under advisement and after having heard most of the case, and after having heard respondent's offers of proof regarding the extra work performed, sustained objections to said evidence and denied respondent's motion to amend the complaint to allege a cause of action for *quantum meruit* for the extra work performed. These extras were not modifications of the original contracts, but were in fact independent oral contracts for additional work done at the request of the appellant's architect. The four year statute of limitations provided for in I.C. 5–217 was applicable, and the trial court properly refused to amend the complaint and to admit evidence upon respondent's claim for extra work.

Respondent claims that the court erred in failing to award interest from the date of appellants' breach of contract, December 1, 1964, on the amount found due under the contract. It is the rule by statute in Idaho that money due "by express contract" or "after the same becomes due" draws interest at 6%, in the absence of express written contract fixing the interest at a different amount. I.C. 28–22–104. In regard to interest on breach of contract damages claims,

"[I]t is . . . settled that 'courts have refused to allow interest from a time prior to judgment when the principal amount of liability was unliquidated. This limitation is apparently based on equitable considerations. However, when the amount of liability is liquidated or capable of ascertainment by mere mathematical processes . . . this Court has allowed interest from a time prior to judgment, for in that event the interest in fully compensating the injured party predominates over other equitable considerations.'" Farm Development Corp. v. Hernandez, 93 Idaho 918, 478 P.2d 298 (1970) (quoting U. S. Fidelity and Guaranty Co. v. Clover Creek Cattle Co., 92 Idaho 889, 900, 452 P.2d 993 (1969).

*Accord, e. g.,* Guyman v. Anderson, 75 Idaho 294, 271 P.2d 1020 (1954) ("interest will be allowed even though the claim is unliquidated 'where the amount due can be readily ascertained by mere computation, or by a legal or recognized standard.' ").

In the case at bar, it is undisputed that appellants owed respondent a certain ascertained amount under the contract. The only dispute revolves around appellants' contention that respondent had not properly performed thereunder. However, this factor does not militate against respondent's claim for interest.

> "In the case . . . a construction contract at an agreed price, when the work has been completed in accordance with the contract, there is a liquidated money debt, even though the defendant may honestly believe the work has not been properly done. . . . In all such cases interest is collectible on the sum due from the date of breach." 5. Corbin, Corbin on Contracts, ¶ 1046, p. 286 (1964).

*See* Healy v. Fallon, 69 Conn. 228, 37 A. 495 (1897).

Respondent is entitled to the legal rate of interest on $18,075.40 from the date of the breach of contract by appellants, December 1, 1964.

Judgment *affirmed in part, reversed in part,* and *remanded* with instructions. Costs to respondent.

McQUADE, C. J., DONALDSON, J., and MARTIN and BEEBE, District Judges concur.

### ON DENIAL OF PETITION FOR REHEARING

Defendant-appellants filed a Petition for Rehearing alleging the Court committed error in the following matters:

First, Assignments I and VI on the issue of allowance of interest, appellants cite Taylor v. Herbold, 94 Idaho 133, 483 P.2d 664 (1971). However, the facts in that case are distinguishable. In the *Taylor* case the sum actually obtained was not established as of the time of the breach of the contract. However, in this case the contract price was due and owing as of the date of breach, December 1, 1965, and therefore as we stated in the *Taylor* case, "Interest should be allowed as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation."

Secondly, Assignments II through V are based upon a mistaken view of the record that the court never granted the plaintiff's amendment to the complaint alleging a second cause of action in contract. While this issue is moot in view of the original opinion entered herein, the trial court, in its memorandum decision, on page 125 of the transcript, specifically stated, "Plaintiff's motion to amend by adding Count Two in contract will be granted. . . ."

Assignment of error VII alleges that the trial court did not find whether Phase One of the contract had in fact been completed. However, the trial court in its memorandum opinion specifically found that plaintiff had completed all construction according to the plans, except for the offsets which involved only Phase Two. Therefore, Assignment VII has no merit.

The other assignments of error in the petition for rehearing are either a request for us to review the conclusions of our original opinion, or are matters raised for the first time on the petition for rehearing. We decline to consider these issues.

The petition for rehearing is denied.